# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| KRISTINA WISNER, Individually and for Others Similarly Situated | Case No. 3:23-cv-853 |
| | Jury Trial Demanded |
| v. | |
| | FLSA Collective Action |
| PROMEDICA HEALTH SYSTEM, INC. | Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Kristina Wisner ("Wisner") brings this class and collective action to recover unpaid wages and other damages from ProMedica Health System, Inc. ("ProMedica").

2.     Wisner worked for ProMedica as a Registered Respiratory Therapist in Ohio.

3.     Like the Putative Class Members (as defined below), Wisner regularly worked more than 40 hours in a workweek.

4.     But ProMedica does not pay them for all the hours they work.

5.     Instead, ProMedica automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.     Wisner and the Putative Class Members are thus not paid for that time.

7.     But ProMedica fails to provide Wisner and the Putative Class Members with *bona fide* meal breaks.

8.     Instead, ProMedica requires Wisner and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9.     ProMedica's auto-deduction policy violates the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq.* ("OMWA"), and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") by depriving Wisner and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

10.    Further, in addition to excluding time Wisner and the Putative Class Members worked during their unpaid "meal breaks," ProMedica also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

11.    But ProMedica failed to include these shift differentials and bonuses in calculating Wisner's and the Putative Class Members' regular rates of pay for overtime purposes.

12.    ProMedica's shift differential and bonus pay scheme violates the FLSA, OMWA, and OPPA by failing to pay Wisner and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

**JURISDICTION & VENUE**

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over ProMedica because ProMedica is a domestic corporation that maintains its headquarters in Toledo, Ohio.

16.    Venue is proper because ProMedica maintains its headquarters in Toledo, Ohio, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

- 2 -

## PARTIES

17.     Wisner worked for ProMedica as a Registered Respiratory Therapist at ProMedica's facility in Toledo, Ohio from approximately May 1982 until January 2022.

18.     Throughout her employment, ProMedica classified Wisner as non-exempt and paid her on an hourly basis.

19.     Throughout her employment, ProMedica subjected Wisner to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

20.     But Wisner never received *bona fide* meal breaks.

21.     Throughout her employment, ProMedica paid Wisner under its shift differential and bonus pay scheme, paying her different hourly rates and/or bonuses depending on what type of shift she worked.

22.     But ProMedica failed to include these shift differentials and bonuses in calculating Wisner's regular rate of pay for overtime purposes.

23.     Wisner's written consent is attached as **Exhibit 1**.

24.     Wisner brings this action on behalf of herself and other similarly situated hourly, non-exempt ProMedica employees who (1) were subject to ProMedica's automatic meal break deduction policy and/or (2) were paid under ProMedica's shift differential and bonus pay scheme.

25.     ProMedica automatically deducts 30 minutes/shift from each of these employees' recorded work time for so-called "meal breaks."

26.     But ProMedica uniformly requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

27.     ProMedica uniformly pays these employees shift differentials and/or bonuses that ProMedica fails to include in calculating their regular rates of pay for overtime purposes.

- 3 -

28.     Thus, ProMedica uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those in excess of 40 hours in a workweek in violation of the FLSA, OMWA and OPPA.

29.     The FLSA Collectives of similarly situated employees are defined as:

**All hourly, non-exempt ProMedica employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective"); and**

**All hourly, non-exempt ProMedica employees who received shift differentials and/or bonuses at any time during the past 3 years ("FLSA Shift Diff Collective Members" or "FLSA Shift Diff Collective").**

30.     The FLSA Meal Break Collective Members and the FLSA Shift Diff Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

31.     Wisner also seeks to represent such classes under the OMWA and OPPA pursuant to FED. R. CIV. P. 23.

32.     The Ohio Classes of similarly situated employees are defined as:

**All hourly, non-exempt ProMedica employees who received an automatic meal period deduction while working in Ohio at any time during the past 2 years ("Ohio Meal Break Class Members" or "Ohio Meal Break Class"); and**

**All hourly, non-exempt ProMedica employees who received shift differentials and/or bonuses while working in Ohio at any time during the past 2 years ("Ohio Shift Diff Class Members" or "Ohio Shift Diff Class").**

33.     The Ohio Meal Break Class Members and the Ohio Shift Diff Class Members are collectively referred to as the "Ohio Class Members" or "Ohio Classes."

34.     The FLSA Collective Members and Ohio Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

- 4 -

35.     ProMedica is an Ohio not-for-profit corporation that maintains its headquarters in Toledo, Ohio.

36.     ProMedica may be served with process by serving its registered agent: **CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219**.

### COVERAGE UNDER THE FLSA

37.     At all relevant times, ProMedica was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38.     At all relevant times, ProMedica, as a hospital network and institution primarily engaged in healthcare, was an enterprise within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

39.     At all relevant times, ProMedica was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because ProMedica, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

40.     At all relevant times, ProMedica has had an annual gross volume of sales made, or business done, of not less than $500,000 each year.

41.     At all relevant times, ProMedica has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

42.     At all relevant times, Wisner and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

43.     ProMedica uniformly deducted 30 minutes/shift from Wisner and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive bona fide, non-interrupted meal breaks.

44.     As a result, ProMedica failed to pay Wisner and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

45.     ProMedica's automatic meal break deduction policy, which deprives Wisner and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

46.     Further, ProMedica uniformly failed to include shift differential payments and bonuses Wisner and the FLSA Collective Members received in calculating these employees' regular rates of pay for overtime purposes.

47.     As a result, ProMedica failed to pay Wisner and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

48.     ProMedica's shift differential and bonus pay scheme, which deprives Wisner and the FLSA Collective Members of overtime compensation at the proper premium rate, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### THE FACTS

49.     ProMedica provides healthcare services that operates hospitals and other medical facilities across Ohio and Michigan.[1]

---

[1] *See* https://www.promedica.org/about-promedica/ (last visited April 24, 2023).

50. ProMedica employs patient care workers, including Wisner and the Putative Class Members, to work in its various healthcare facilities.

51. ProMedica uniformly classifies these employees as non-exempt from overtime compensation and pays them on an hourly basis.

52. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

53. For example, Wisner worked for ProMedica as a Registered Respiratory Therapist at ProMedica's facility in Toledo, Ohio from approximately May 1982 until January 2022.

54. As a Registered Respiratory Therapist, Wisner's primary responsibilities include interviewing and examining ProMedica patients with breathing or cardiopulmonary disorders, performing breathing treatments, and assisting doctors and other patient care staff.

55. Throughout her employment, ProMedica classified Wisner as non-exempt and paid her on an hourly basis.

56. Throughout her employment, ProMedica subjected Wisner to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

57. Throughout her employment, ProMedica paid Wisner shift differentials and bonuses that ProMedica failed to include in calculating her regular rate of pay for overtime purposes.

58. Wisner and the Putative Class Members performed their jobs under ProMedica's supervision, and using materials, equipment, and technology approved and supplied by ProMedica.

59. ProMedica requires Wisner and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

60.     At the end of each pay period, Wisner and the Putative Class Members received wages from ProMedica that were determined by common systems and methods that ProMedica selected and controlled.

61.     ProMedica requires its hourly, non-exempt employees, including Wisner and the Putative Class Members, to record their hours worked using ProMedica's timeclock system.

62.     Further, ProMedica subjects its hourly, non-exempt employees, including Wisner and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

63.     Specifically, ProMedica automatically deducts 30 minutes from Wisner's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

64.     But ProMedica fails to provide Wisner and the Putative Class Members with *bona fide* meal periods.

65.     Instead, ProMedica requires Wisner and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

66.     This unpaid time is compensable under the FLSA, OMWA, and OPPA because ProMedica knew, or should have known, that (1) Wisner and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 20 consecutive minutes.

67. The unpaid time is also compensable under the OPPA because ProMedica agreed to pay Wisner and the Ohio Meal Break Class Members an hourly rate of pay for all time they worked, and ProMedica failed to pay Wisner and the Ohio Meal Break Class Members all their earned wages.

68. ProMedica failed to exercise its duty to ensure Wisner and the Putative Class Members were not performing work that ProMedica did not want performed during their unpaid "meal breaks."

69. Despite accepting the benefits, ProMedica did not pay Wisner and the Putative Class Members for the compensable work they performed during their "meal breaks."

70. Thus, under ProMedica's uniform automatic meal break deduction policy, Wisner and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA, OMWA, and OPPA.

71. Likewise, under ProMedica's uniform automatic meal break deduction policy, Wisner and the Ohio Class Members are denied "straight time" pay for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the OPPA.

72. ProMedica also subjects Wisner and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment.

73. ProMedica's uniform rounding policy violates the FLSA, OMWA, and OPPA by depriving Wisner and the Putative Class Members of overtime pay for all overtime hours worked because ProMedica fails to include all work time in these employees' total hours worked.

74. Likewise, ProMedica's uniform rounding policy violates the OPPA by depriving Wisner and the Ohio Class Members of "straight time" pay for all hours worked up to 40 hours in a workweek because ProMedica fails to include all work time in these employees' total hours worked.

- 9 -

75.     Further, in addition to excluding time Wisner and the Putative Class Members worked, ProMedica also paid these employees shift differentials and bonuses depending on what type of shifts they worked.

76.     But ProMedica failed to include these shift differentials and bonuses in calculating Wisner and the Putative Class Members' regular rates of pay for overtime purposes.

77.     ProMedica's shift differential pay scheme violates the FLSA, OMWA, and OPPA by failing to pay Wisner and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

78.     ProMedica knows Wisner and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because ProMedica expects and requires these employees to do so.

79.     But ProMedica does not pay Wisner and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA, OMWA, and/or OPPA.

80.     Wisner worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

81.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

82.     Indeed, ProMedica typically schedules Wisner and the Putative Class Members to work 12-hour shifts for 3 to 4 days a workweek.

83.     And Wisner and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

84. As a result, Wisner and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

85. When Wisner and the Putative Class Members worked more than 40 hours in a workweek, ProMedica did not pay them 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because ProMedica failed to include (1) time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and (2) these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

86. Likewise, when Wisner and the Ohio Class Members worked fewer than 40 hours in a workweek, ProMedica did not pay them "straight time" pay (at their agreed hourly rates) for all hours worked because ProMedica failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

87. ProMedica knew, or should have known, it was subject to the FLSA and OMWA, including their respective overtime provisions.

88. ProMedica knew, or should have known, the FLSA and OMWA require it to pay employees, including Wisner and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

89. ProMedica knew, or should have known, the OPPA requires it to pay employees, including Wisner and the Ohio Meal Break Class Members, all wages earned, for all hours worked, at the rates ProMedica agreed to pay them.

90. ProMedica knew, or should have known, Wisner and the Putative Class Members worked more than 40 hours in a workweek.

91.     ProMedica knew, or should have known, Wisner and the Putative Class Members regularly worked during their unpaid meal breaks because ProMedica expected and required them to do so.

92.     ProMedica knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Wisner and the Putative Class Members of wages, including overtime compensation at the proper premium rate, for all hours worked in violation of the FLSA, OMWA, and/or OPPA.

93.     Nonetheless, ProMedica failed to pay Wisner and the Putative Class Members wages, including overtime compensation at the proper premium rate, for all hours these employees worked, including those worked in excess of 40 hours in a workweek.

94.     Likewise, ProMedica failed to pay Wisner and the Ohio Class Members all their wages earned, at the rates ProMedica agreed to pay them, for the work they performed for ProMedica.

95.     ProMedica's failure to pay Wisner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

96.     Wisner brings her claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

97.     The Putative Class Members were uniformly victimized by ProMedica's automatic meal break deduction policy and/or ProMedica's shift differential and bonus pay scheme, which are in willful violation of the FLSA, OMWA, and/or OPPA.

98.     Other Putative Class Members worked with Wisner and indicated they were paid in the same manner, performed similar work, and were subject to ProMedica's same illegal pay policies.

99.     Based on her experiences with ProMedica, Wisner is aware ProMedica's illegal practices were imposed on the Putative Class Members.

100.    The Putative Class Members are similarly situated in all relevant respects.

101.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

102.    Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

103.    Rather, the Putative Classes are held together by ProMedica's uniform automatic meal break deduction policy and/or ProMedica's uniform shift differential and bonus pay scheme that systematically deprived Wisner and the Putative Class Members of wages, including overtime pay at the proper premium rate based on all renumeration received, for all hours worked, including those hours worked in excess of 40 hours in a workweek.

104.    The Ohio Class Members are similarly denied "straight time" pay when they worked fewer than 40 hours in a workweek.

105.    The Putative Class Members are similarly denied overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

106.    The back wages ProMedica owes to Wisner and the Putative Class Members will be calculated using the same records and using the same formula.

107.    Wisner's experiences are therefore typical of the experiences of the Putative Class Members.

108.     Wisner has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

109.     Like each Putative Class Member, Wisner has an interest in obtaining the unpaid wages owed under federal and/or state law.

110.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111.     Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and ProMedica will reap the unjust benefits of violating the FLSA, OMWA, and OPPA.

112.     Further, even if some of the Putative Class Members could afford individual litigation against ProMedica, it would be unduly burdensome to the judicial system.

113.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

114.     The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

115.     Among the common questions of law and fact are:

    a.     Whether ProMedica engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, OMWA, and/or OPPA;

    b.     Whether ProMedica's automatic meal break deduction policy deprived Wisner and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, OMWA, and/or OPPA;

c. Whether ProMedica failed to pay Wisner and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks in violation of the FLSA, OMWA, and/or OPPA;

d. Whether ProMedica failed to pay Wisner and the Ohio Class Members "straight time" pay at their agreed hourly rates for all hours worked because ProMedica failed to include time these employees worked during their meal breaks in their total number of hours worked in a given workweek in violation of the OPPA;

e. Whether ProMedica knew, or had reason to know, Wisner and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, OMWA, and OPPA;

f. Whether ProMedica failed to include Wisner and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA , OMWA, and/or OPPA;

g. Whether ProMedica's violations of the FLSA, OMWA, and/or OPPA resulted from a continuing course of conduct;

h. Whether ProMedica's decision not to pay Wisner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith; and

        i.      Whether ProMedica's violations of the FLSA, OMWA, and/or OPPA were willful.

116.    Wisner and the Putative Class Members sustained damages arising out of ProMedica's illegal and uniform employment policies.

117.    Wisner knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

118.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ProMedica's records, and there is no detraction from the common nucleus of liability facts.

119.    Therefore, the issue of damages does not preclude class or collective treatment.

120.    ProMedica is liable under the OPPA for failing to pay Wisner and the Ohio Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

121.    ProMedica is liable under the FLSA, OMWA, and OPPA for failing to pay Wisner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they worked more than 40 hours in a workweek.

122.    Consistent with ProMedica's illegal automatic meal break deduction policy, Wisner and the Ohio Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

123.    Consistent with ProMedica's illegal automatic meal break deduction policy, Wisner and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

124.     Consistent with ProMedica's illegal shift differential and bonus pay scheme, Wisner and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

125.     As part of its regular business practices, ProMedica intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, OMWA, and/or OPPA with respect to Wisner and the Putative Class Members.

126.     ProMedica's illegal policies deprived Wisner and the Putative Class Members of wages, including overtime compensation at the proper premium rate for all overtime hours worked, which they are owed under federal and/or state law.

127.     There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

128.     This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

129.     Those similarly situated employees are known to ProMedica, are readily identifiable, and can be located through ProMedica's records.

**<u>COUNT I</u>**
**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVES)**

130.     Wisner realleges and incorporates all other paragraphs by reference.

131.     Wisner brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

132.     ProMedica violated, and is violating, the FLSA by failing to pay Wisner and the FLSA Collective Members overtime wages at rates not less than 1.5 times these employees' regular rates of

pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

133.    Throughout the relevant period, ProMedica automatically deducted 30 minutes/shift from Wisner and the FLSA Collective Members recorded work time for so-called "meal breaks."

134.    Throughout the relevant period, ProMedica expected and required Wisner and the FLSA Collective Members to remain on-duty and be available to work, including during their unpaid meal breaks.

135.    Throughout the relevant period, ProMedica paid Wisner and the FLSA Collective Members shift differentials and bonuses that it failed to include in its calculations on these employees' regular rates of pay for overtime purposes.

136.    Wisner and the FLSA Collective Members have been harmed as a direct and proximate result of ProMedica's unlawful conduct because they have been deprived of wages owed for work that they performed and from which ProMedica derived a direct and substantial benefit.

137.    ProMedica knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Wisner and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

138.    ProMedica's failure to pay Wisner and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

139.    Accordingly, Wisner and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

<u>COUNT II</u>
FAILURE TO PAY OVERTIME WAGES UNDER THE OMWA
(OHIO CLASSES)

140. Wisner realleges and incorporates all other paragraphs by reference.

141. Wisner brings her claim under the OMWA as a Rule 23 class action.

142. The conduct alleged violates the OMWA (O.R.C. § 4111.01, *et seq.*).

143. At all relevant times, ProMedica was an "employer" subject to the requirements of the OMWA.

144. At all relevant times, ProMedica employed Wisner and the Ohio Class Members as "employees" within the meaning of the OMWA.

145. The OMWA requires employers, like ProMedica, to pay employees at a rate not less than 1.5 times their regular rate of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in any one workweek. *See* O.R.C. § 4111.03(A).

146. Wisner and the Ohio Class Members are entitled to overtime pay under the OMWA.

147. ProMedica violated, and is violating, the OMWA by failing to pay Wisner and the Ohio Class Members overtime compensation at the proper premium rate for all hours worked in excess of 40 in a workweek. *See* O.R.C. § 4111.03(A).

148. Specifically, ProMedica's automatic meal break deduction policy violates the OMWA because it deprives Wisner and the Ohio Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek. *See* O.R.C. § 4111.03(A).

149. Further, ProMedica's shift differential and bonus pay scheme violates the OMWA because it deprives Wisner and the Ohio Class Members of overtime pay at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked. *See* O.R.C. § 4111.03(A).

150.     Wisner and the Ohio Class Members have been harmed as a direct and proximate result of ProMedica's unlawful conduct because they have been deprived of wages owed for work that they performed and from which ProMedica derived a direct and substantial benefit.

151.     ProMedica knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Wisner and the Ohio Class Members overtime compensation at the proper premium rate for all overtime hours worked.

152.     ProMedica's failure to pay Wisner and the Ohio Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

153.     Accordingly, Wisner and the Ohio Class Members are entitled to recover their unpaid overtime compensation, liquidated damages in an amount equal to their unpaid compensation, as well as attorney's fees, costs, and expenses. *See* O.R.C. § 4111.10(A).

### COUNT III
### FAILURE TO PAY ALL WAGES UNDER THE OPPA
### (OHIO CLASSES)

154.     Wisner realleges and incorporates all other paragraphs by reference.

155.     Wisner brings her claim under the OPPA as a Rule 23 class action.

156.     The conduct alleged violates the OPPA (O.R.C. § 4113.15).

157.     At all relevant times, ProMedica was an "employer" subject to the requirements of the OPPA.

158.     At all relevant times, ProMedica employed Wisner and the Ohio Meal Break Class Members as "employees" within the meaning of the OPPA.

159.     The OPPA requires employers, like ProMedica, to pay employees for all time they work at the rate(s) agreed to by the parties. *See* O.R.C. § 4113.15.

160.     During the course of their employment, ProMedica agreed to pay Wisner and each Ohio Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek, as well as an overtime rate (1.5 times regular rate of pay) for all hours they worked in excess of 40 hours in a workweek.

161.     Wisner and each Ohio Class Member accepted ProMedica's offer.

162.     But during the course of their employment, ProMedica failed to pay Wisner and the Ohio Class Members for all time they worked at the rates ProMedica agreed to pay them for the work they performed because (1) ProMedica automatically deducted 30 minutes/shift from these employees' recorded hours worked and/or (2) ProMedica failed to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

163.     Wisner and the Ohio Class Members' unpaid "straight time" and overtime wages have remained unpaid for more than 30 days beyond their regularly scheduled paydays.

164.     ProMedica violated, and is violating, the OPPA by failing to pay Wisner and the Ohio Class Members all wages earned for all hours worked at the rates ProMedica agreed to pay them for the work they performed. *See* O.R.C. § 4113.15(A).

165.     Specifically, ProMedica's automatic meal break deduction policy violates the OPPA because it deprives Wisner and the Ohio Class Members of pay for all hours worked – including those hours worked during their unpaid "meal breaks" – at the rates ProMedica agreed to pay them. *See* O.R.C. § 4113.15(A).

166.     Further, ProMedica's shift differential and bonus pay scheme violates the OPPA because it deprives Wisner and the Ohio Class Members of overtime pay at the rates ProMedica

agreed to pay them (1.5 times their regular rates of pay – based on *all* renumeration received) for all overtime hours worked. *See* O.R.C. § 4111.03(A).

167. Accordingly, Wisner and the Ohio Class Members are entitled to recover their unpaid "straight time" and overtime compensation, plus liquidated damages, as well as attorney's fees, costs, and expenses. *See* O.R.C. § 4113.15(B).

### JURY DEMAND

168. Wisner demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Wisner, individually and on behalf of the Putative Class Members, seeks the following relief:

a. An Order designating the FLSA Collectives as collective actions and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. An Order designating the Ohio Classes as class actions pursuant to FED. R. CIV. P. 23;

c. An Order appointing Wisner and her counsel to represent the interests of the FLSA Collectives and Ohio Classes;

d. An Order pursuant to Section 16(b) of the FLSA finding ProMedica liable for unpaid overtime wages due to Wisner and the FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid overtime compensation;

e.  An Order finding ProMedica liable to Wisner and the Ohio Class Members for unpaid overtime compensation owed under the OMWA, as well as for liquidated damages in an amount equal to their unpaid overtime compensation;

f.  An Order finding ProMedica liable to Wisner and the Ohio Class Members for unpaid "straight time" and overtime wages owed under the OPPA, plus liquidated damages;

g.  Judgment awarding Wisner and the Putative Class Members all unpaid compensation and other damages available under the FLSA, OMWA, and OPPA;

h.  An Order awarding attorney's fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
614-949-1181 – Telephone
614-386-9964 – Facsimile
mcoffman@mcoffmanlegal.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**

## **JURY DEMAND**

Named Plaintiff requests a trial by jury.

*/s/ Matthew J.P. Coffman*

Matthew J.P. Coffman
